UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BESMIR BYTYQI, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> -against- <br><br> BOCCA NEW YORK LLC, ARTUR FOGEL BILLY KARASIK, and EVGENIA HULDISCH, <br><br> Defendants. | Case No. 17-cv-00303 (LGS) |

**JOINT MOTION FOR APPROVAL OF SETTLEMENT
AND DISMISSAL OF ALL CLAIMS WITH PREJUDICE**

Braverman Law PC
Adam Braverman, Esq.
450 Seventh Avenue, Suite 1308
New York, NY 10123
Tel.: (212) 206-8166
adam@bravermanlawfirm.com
*Attorneys for Plaintiff*

Milman Labuda Law Group PLLC
Netanel Newberger, Esq.
3000 Marcus Avenue, Ste. 3W8
Lake Success, New York 11042
Tel.: (516) 328-8899
netanel@mmmlaborlaw.com
*Attorneys for Defendants*

## INTRODUCTION

By this Joint Motion, Besmir Bytyqi ("Bytyqi" or "Plaintiff") and Bocca New York LLC ("Bocca New York"), Artur Fogel, Billy Karasik and Evgenia Huldisch (collectively, "Defendants," and together with Plaintiff, the "Parties"), hereby seek Court approval of the settlement they have reached in this matter, as reflected in their Settlement Agreement and Release attached hereto as Exhibit A (the "Agreement"), entry of the Stipulation of Dismissal, annexed to the Agreement, and dismissal with prejudice of the above-referenced matter. The Parties also request that the Court retain jurisdiction over this matter for purposes of enforcing the Agreement in the event of default.

## FACTUAL AND PROCEDURAL BACKGROUND

Bytyqi worked as a server at the restaurant operated by Defendants from approximately August 8, 2015 until on or about October 2, 2016, when defendants terminated his employment. On January 14, 2017, Bytyqi filed this wage and hour action against Defendants (the "Litigation"). See ECF No. 1. In the Complaint, Bytyqi alleges that, during the period from the beginning of his employment until approximately December 31, 2015, he worked approximately 55-60 hours per week, and that from approximately January 2016 until June 1, 2016, he generally worked approximately 45-50 hours per week, and that he generally did not work any overtime after June 1, 2016. *See* Complaint, ¶¶ 39-47. With respect to his pay, Bytyqi alleges that during 2015, he received $5.00 per hour, plus tips, with no increase in the hourly rate for the hours over 40 that he worked in a workweek; and that during 2016, he received $7.50 per hour, plus tips, including for all hours over 40 in a workweek. *Id.* at ¶¶ 48-49. Plaintiff Bytyqi also alleged that his managers, who did not generally participate in direct client service, received a share of the tip pool, making the pool improper. *Id.* at ¶¶ 29-34. Finally, Bytqyi also asserted

that he did not receive notices informing him of his rate of pay at the time of hiring, legally compliant paystubs or notices that the restaurant would take a "tip credit" against his wages. *Id.* at ¶¶ 52-53.

Upon these alleged facts, Bytyqi asserted claims for overtime wages, unpaid minimum wages (in so far as Defendants were not entitled to enjoy the tip credit and pay Bytyqi the reduced minimum wage for tipped employees), spread-of-hours pay, Wage Theft Prevention Act ("WTPA") fees, misappropriated tips, statutory damages, liquidated damages, interest, and attorneys' fees and costs under the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), and the New York Wage Theft Prevention Act ("WTPA").

Defendants filed their Answer on April 13, 2017 (ECF No. 19), in which they generally denied the material allegations in the Complaint.

On April 18, 2017, the Parties attended an initial conference before Judge Lorna G. Schofield, following which Judge Schofield issued Case Management Plan and Scheduling Ordre setting forth a discovery schedule. ECF No. 21.

During the course of the Litigation, defense counsel produced substantial documentation, including POS records, tip pool records, and other payroll records.  Plaintiff Bytyqi produced numerous time slips purporting to show the number of hours worked for the days covered by the slips.

On a parallel track, the Parties continued to negotiate a possible settlement in good faith. As discussed in further detail below, the Parties took opposite positions the number of overtime hours worked by Bytyqi and whether there had been an improper tip pool. The Parties thus decided that settlement was the appropriate course of action.

On September 14, 2017, the Parties advised informed the Court of the settlement in

principle. ECF No. 25.

Pursuant to the Court's Order dated September 15, 2017, ECF No. 26, and *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), the Parties submit this Joint Motion requesting that the Court approve the settlement and dismiss the Litigation with prejudice, but retain jurisdiction over this matter for purposes of enforcing the Agreement in the event of default.

## ARGUMENT

### THE COURT SHOULD APPROVE THE SETTLEMENT OF PLAINTIFF'S FLSA CLAIMS AS FAIR AND REASONABLE AND DISMISS THE ACTION WITH PREJUDICE

*Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), provides that stipulated dismissals settling FLSA claims with prejudice require the approval of a United States District Court or the Department of Labor. 796 F.3d at 200. "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." *Martinez v. Hilton Hotels Corp.*, No. 10 Civ. 7688 (JLC), 2013 WL 4427917, at *2 (S.D.N.Y. Aug. 20, 2013) (quoting *Garcia v. Bae Cleaners Inc.*, No. 10 Civ. 7804 (KBF), 2012 WL 1267844, at *1 (S.D.N.Y. Apr. 12, 2012)). Courts in the Second Circuit consider the totality of the circumstances, including the following factors, when determining whether a proposed settlement is fair and reasonable:

> (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the

possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotations omitted). The Parties believe the settlement here is fair and reasonable under these factors.

**I.      Plaintiff's Litigation Risks**

The settlement is reasonable in light of the significant litigation risks that Bytyqi will face should this case continue. One of Bytyqi's primary contentions was overtime. While there was basic agreement that the hourly rate was not increased for hours over 40 in a workweek, at dispute was the number of overtime hours that Bytyqi worked. Defendants contended that the POS systems showed that Bytyqi worked fewer overtime hours than he claimed. In particular, the Defendants asserted that some of the time slips that Plaintiff presented in support of his asserted hours were erroneous in that Bytyqi failed to punch out when he left the restaurant.

In addition, with respect to the improper tip pooling claims, the documentary evidence cast some doubt on the frequency with which the managers actually participated in the tip pool. And when these managers did so participate, according to the Defendants, it was because on those days they engaged in client service similar to that of the servers. Litigating that particular issue would have been a fact intensive, "he-said, he said" dispute with an uncertain outcome. In the absence of the improper tip pool, Bytqyi would only have a minimum wage claim if he could convince the Court that he did not receive sufficient notice that the restaurant was taking a tip credit. His ability to do was uncertain given the documentary evidence produced.

In addition, during the course of the case, it became clear that the Plaintiff had received some monies stemming from an investigation by the New York Department of Labor into the restaurant's pay practices, covering spread of hours, overtime wages and fines for failure to keep accurate payroll records. This audit covered the period from November 1, 2015 through April 3,

2016, comprising five months of the 14 months of Plaintiff's employment with the Defendants. This audit thus reduced Plaintiff's possible recovery.

## II.     Possible Range of Recovery and Distributions

After excluding the period covered by the NY DOL audit, Braverman Law computed Plaintiff's possible damages to be $23,942.13, such figure including unpaid minimum wages, overtime wages, spread-of-hours pay, misappropriated tips and liquidated damages. However, as explained above, this figure was subject to reduction for a number of reasons, including a finding the Defendants were entitled to enjoy the tip credit (because there was no improper tip pool and Plaintiff had sufficient notice), that there were no misappropriated tips, and that Plaintiff worked far fewer overtime hours than he alleged. If the Court were to credit the Defendants' characterization, damages would have been $269.91 in overtime damages, and $567.00 in spread-of-hours damages, for a total of $836.91.  Notably, this figure is significantly less than the settlement amount of $11,500.  A settlement of $11,500 thus represents a reasonable and fair settlement, particularly because it is substantially higher than the amount Bytyqi would receive if the Court were to credit the defendants' position.

## III.    Avoidance of Litigation Burdens and Expenses

By the time that the Parties reached an agreement in principle to settle this matter, document discovery was substantially complete, but depositions were still outstanding.  Such depositions certainly would have required substantial additional attorney time.  Dispositive motions were also a possibility.  Plaintiff could have sought summary judgment on his overtime and WTPA claims, for example. If no summary judgment motions were successful, a likely outcome considering the fact-intensive nature of the disputes at issue, the case would then be tried.  Both sides would incur significant legal expenses that are more appropriately spent on

settling the case.

## IV.  Arms' Length Negotiations, Absence of Collusion

The Parties' attorneys are competent and experienced in wage and hour matters. Counsel engaged in extensive arm's length and vigorous negotiations on behalf of the Parties. Settlement of this matter required a significant expenditure of time and effort, including various discussions with Plaintiff, the creation and subsequent review and discussion of damage calculation spreadsheets, and the negotiation of the terms of the Agreement.

The Parties' vigorous negotiations and amount of work performed in this matter confirm that there was no collusion or fraud and that the settlement amount is the product of fair and reasonable negotiations.

## V.  Attorneys' Fees

Under the settlement, Plaintiffs' counsel will receive $3,061.00 from the settlement fund as attorneys' fees, and $689.00 as reimbursement for out-of-pocket expenses and disbursements incurred by the Plaintiff's attorneys (comprised of the PACER fees and fees for service of process fees). The requested legal fee of $3,061.00 represents 28.31% of the recovery in this litigation, after expenses are accounted for. The amount provided to Plaintiffs' counsel under the settlement is fair and reasonable and well within the range of fees typically awarded in cases in this Circuit, as one-third contingency fees (i.e. fees of 33.33%) are commonly approved as part of FLSA settlements in the Southern and Eastern Districts of New York. *See, e.g., Abrar*, 2016 WL 1465360, at *3 (approving attorneys' fees for one third of the total settlement as fair and reasonable) (citing *Romero v. Westbury Jeep Chrysler Dodge, Inc.*, No. 15 Civ. 4145, 2016 WL 1369389, at *2 (E.D.N.Y. Apr. 6, 2016); and *Gaspar v. Pers. Touch Moving, Inc.*, No. 13 Civ. 8187, 2015 WL 7871036, at *2 (S.D.N.Y. Dec. 3, 2015). Furthermore, Plaintiff's counsel

expended approximately 27 hours on this matter, resulting in a lodestar[1] of $9,450.00 (based on an hourly rate of $350.00 per hour), which is significantly higher than the requested legal fee.

In light of the nature of the issues herein, and the extensive negotiations necessary to reach the agreed-upon settlement, Plaintiff's counsel's requested award is reasonable.  *See Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. at 60; see also *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010).  Moreover, everyone covered by this settlement has already agreed to the legal fee provided for in the settlement.

## VI.    Retention of Jurisdiction

The Parties respectfully request that the Court retain jurisdiction over this matter for purposes of enforcement of the Agreement. The Parties agree that in doing so, the Court will ensure the fairness and reasonableness of the Agreement, because Bytyqi will be further secured in the event that Defendants default.

## CONCLUSION

For all the foregoing reasons, the Parties respectfully request that their Joint Motion for Approval of Settlement and Dismissal of All Claims be granted and that the Court dismiss the action with prejudice through entry of the Stipulation and Order of Dismissal with Prejudice; provided, however that the Parties respectfully request that the Court retain jurisdiction over this matter for purposes of enforcing the terms of the Agreement in the event of default.

Dated:        New York, New York
              October 16, 2017

---

[1] Plaintiff's counsel will provide the Court with time records from this matter at the Court's request.

| BRAVERMAN LAW PC | MILMAN LABUDA LAW GROUP PLLC |
|---|---|
| By: __/s/_____<br>    Adam Braverman, Esq.<br>450 Seventh Avenue, Suite 1308<br>New York, NY 10123<br>Tel.: (212) 206-8166<br>adam@bravermanlawfirm.com | By: __/s/_____<br>    Netanel Newberger, Esq.<br>3000 Marcus Avenue, Ste. 3W8<br>Lake Success, New York 11042<br>Tel.: (516) 328-8899<br>netanel@mmmlaborlaw.com |
| *Attorneys for Plaintiff* | *Attorneys for Defendants* |